UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DOROTHY POOLE )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>HANCOCK COUNTY, MAINE, et. al., )<br>)<br>Defendants ) | 1:22-cv-00364-JDL |

**RECOMMENDED DECISION ON MOTION TO AMEND, MOTION TO DISMISS, AND MOTION FOR MORE DEFINITE STATEMENT**

Plaintiff Dorothy Poole, individually and as personal representative of the Estate of Tyler Poole, alleges that the defendants, which consist of Hancock County, Sheriff Scott Kane, Hancock County Jail Administrator Frank Shepard, jail medical staff, and corrections officers, are responsible for the suicide death of her son, Tyler, while he was incarcerated in the Hancock County Jail.

Defendants Howard and Willey, family nurse practitioners at the jail, moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) (Motion to Dismiss, ECF No. 6.) In addition to her response to the motion to dismiss, Plaintiff filed a motion to amend her complaint. (Motion to Amend, ECF No. 27.) Defendant Parkin, a registered nurse at the Hancock County Jail, asks the Court to order Plaintiff to provide a more definite statement pursuant to Federal Rules of Civil Procedure 12(e). (Motion for More Definite Statement, ECF No. 21.)

Following a review of the record and after consideration of the parties' arguments, I recommend the Court grant in part Plaintiff's Motion for Leave to Amend, dismiss as

moot Defendants Howard and Willey's Motion to Dismiss, and deny Defendant Parkin's Motion for More Definite Statement.[1]

## BACKGROUND

The following facts are drawn from Plaintiff's proposed amended complaint (ECF No. 28), in which Plaintiff supplements the claims alleged in the original complaint but does not add any new claims.[2]

Plaintiff Dorothy Poole is the mother of Tyler Poole (Tyler). (Proposed Amended Complaint ¶ 4, ECF No. 28.) On December 5, 2020, Tyler was arrested on a probation violation and new criminal charges; he was transported to the Hancock County Jail. (*Id*. ¶¶ 32-33.) Prior to his arrest, Tyler had an extensive criminal history, which included multiple drug-related convictions. (*Id*. ¶¶ 28-30.)

At the jail, Defendant Young completed a suicide screening, which Plaintiff characterized as inadequate. (*Id*. ¶ 34.) He also completed the inmate questionnaire, during which process Tyler revealed he was taking suboxone and Prilosec. (*Id*. ¶ 35.) Tyler was

---

[1] The motions for more definite statement and for leave to amend the complaint are the type of pretrial matters that are ordinarily within the authority of the magistrate judge upon referral. 28 U.S.C. § 636(b)(1)(a). An involuntary motion to dismiss is not. *Id*. Because the assessment of each motion is to some degree dependent on the assessment of one of the other motions, because the recommendation on the motion to amend is arguably dispositive in this Court on one of Plaintiff's claims against Defendants Howard and Willey, and to avoid confusion as to the applicable standard of review should a party wish to object to my conclusions, I determined that a recommended decision on all three pending motions was appropriate.

[2] Defendants Howard and Willey object to the motion to amend. The other defendants have not filed a response to the motion and, therefore, have waived objection to the motion. *See* District of Maine Local Rule 7(b). Although Defendants Howard and Willey argue the Court should deny the motion in part because of the timing of the motion, Defendants principally contend that the proposed amendment would be futile. Because I recommend the Court grant in part the motion to amend and because the Court's futility analysis is governed by the same standard that would govern the motion to dismiss, I set forth the facts as alleged in the proposed amended complaint.

then quarantined pursuant to the jail's coronavirus protocols. (*Id.* ¶ 36). Tyler had a history of substance use disorder, self-harm, bipolar disorder, anxiety, depression, and aggression. (*Id.* ¶¶ 28, 39, 42.) Plaintiff alleges jail personnel did not complete the request for authorization for the release of Tyler's medical information. (*Id.* ¶ 38). Tyler's medical records would have revealed that Tyler reported a self-harm episode that was precipitated by being placed in solitary confinement. (*Id.* ¶¶ 39 - 41.)

On December 7, 2020, shortly after Tyler was detained, he informed Defendant Gross that he was struggling because he was detoxing from suboxone. (*Id.* ¶ 44.) Defendant Gross called Defendant Howard about Tyler's medical needs; Defendant Howard advised Defendant Gross to institute a Clonidine detox protocol and to alert the rest of the medical staff. (*Id.* ¶ 46.)

On December 8, 2020, Defendant Gross started a medical administration record, and Tyler received his first dose of Clonidine. (*Id.* ¶ 47.) Defendant Gross advised Defendant Parkin of her interactions with Tyler. (*Id.*) That morning, Tyler completed his first medical request form and Defendant Willey signed the form. (*Id.* ¶ 48.) He reiterated he was feeling worse and losing his appetite and wrote that he was "begging for help." (*Id.*) In the afternoon, Tyler completed another medical request form, which Defendant Willey signed. (*Id.* ¶¶ 50-51.) Tyler asked for help and told the medical staff of mood swings, lack of sleep, acid reflux, increased anxiety, and that he "feel[s] like [he's] losing it." (*Id.* ¶¶ 50-51.) Defendant Parkin spoke with Tyler about his prescription history and contacted his pharmacy to investigate the time of his last refill. (*Id.* ¶ 52-55.) Defendant Howard ordered melatonin for Tyler. (*Id.* ¶ 57.)

On December 10, 2020, Tyler completed his third medical request form, which was signed by Defendant Parkin. (*Id.* ¶¶ 60-61.) In this request, Tyler suggested the melatonin was not helping, and reported that he continued to struggle to sleep, his anxiety was high, and his anger was getting worse. (*Id.*) Defendant Parkin wrote a medical note documenting Tyler's continued anxiety and that she notified Defendant Howard, who ordered Hydroxyzine. (*Id.* ¶ 62.)

A friend who was detained at the same time recalls that also on December 10, while at court, Tyler told an officer that "[b]efore I go back to prison they will take me out in a body bag," and "I'll die before I spend another day in prison." (*Id.* ¶ 66.) Tyler told the friend that he planned to kill himself. (*Id.* ¶ 69.) The friend warned Hancock County Jail staff. (*Id.* ¶ 70.)

The next day, Friday, December 11, 2020, Defendant Parkin visited Tyler to check on his anxiety and sleep issues. (*Id.* ¶ 63.) Tyler had slept and was feeling less anxious. (*Id.*) Defendant Parkin and Tyler spoke about his mental health needs and possible additional medication. (*Id.*) Defendant Parkin told Tyler to let the weekend staff know if he had "additional concerns." (*Id.*) They agreed to talk on Monday. (*Id.*)

On December 13, 2020, Tyler did not receive his medication. (*Id.* ¶ 73.) At some point in the day, Tyler asphyxiated himself with a bedsheet tied to his bunk. Tyler died at the hospital on December 15, 2020; the cause of death was noted as "severe anoxic brain injury as the result of asphyxiation." (*Id.* ¶ 37.)

## DISCUSSION

**A. Motion to Amend**

When a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id. See also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). A "futile" amendment is one that "would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). In other words, "if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Boston & Me. Corp. v. Hampton*, 987 F.2d 855, 868 (1st Cir. 1993).

Defendants Howard and Willey urge the Court to deny the motion because Plaintiff was aware of all the facts alleged in the proposed amended complaint and, therefore, Plaintiff delayed in asserting the amendment. Defendants' argument is unpersuasive. Plaintiff moved to amend before the Court issued a scheduling order authorizing discovery. The amendment will not result in a delay of the proceedings or prejudice to any party.

Defendants also argue the amendment would be futile because the proposed amendment does not allege facts sufficient to support a deliberate indifference claim asserted against them in Count I.  Defendants' argument fails.

Plaintiff's federal claim pursuant to 42 U.S.C. § 1983 is governed by the Fourteenth Amendment to the United States Constitution.  "Pretrial detainees are protected under the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment; however, the standard to be applied is the same as that used in Eighth Amendment cases." *Burrell v. Hampshire Cnty.*, 307 F.3d 1, 7 (1st Cir. 2002).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  From this prohibition, "courts have derived the principles that govern the permissible conditions under which prisoners are held and that establish the medical treatment those prisoners must be afforded." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "The Eighth Amendment, applied to the states through the Fourteenth Amendment, protects incarcerated people from state corrections officials' 'deliberate indifference to serious medical needs.'" *Zingg v. Groblewski*, 907 F.3d 630, 634–35 (1st Cir. 2018) (quoting *Feeney v. Corr. Med. Servs., Inc.*, 464 F.3d 158, 161–62 (1st Cir. 2006); *see Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015).  To allege "a claim of deliberate indifference based on inadequate or delayed medical care, 'a plaintiff must satisfy both a subjective and objective inquiry.'" *Perry*, 782 F.3d at 78 (quoting *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011)).

To demonstrate a claim under the objective prong, a plaintiff "must show that []he has a serious medical need for which []he has received inadequate treatment." *Kosilek*, 774 F.3d at 85. For a medical condition to be objectively "serious," there must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). This "requires that the need be 'one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Kosilek*, 774 F.3d at 82 (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). However, this "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." *Id.* (citations omitted). "Rather, the Constitution proscribes care that is 'so inadequate as to shock the conscience.'" *Id.* at 83 (quoting *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991)).

Under the subjective prong, "a plaintiff must show 'that prison officials possessed a sufficiently culpable state of mind, namely one of deliberate indifference to an inmate's health or safety.'" *Perry*, 782 F.3d at 78 (quoting *Leavitt*, 645 F.3d at 497). Thus, "even if medical care is so inadequate as to satisfy the objective prong, the Eighth Amendment is not violated unless prison administrators also exhibit deliberate indifference to the prisoner's needs." *Kosilek*, 774 F.3d at 83.

"For purposes of this subjective prong, deliberate indifference 'defines a narrow band of conduct,' and requires evidence that the failure in treatment was purposeful." *Id.* (quoting *Feeney*, 464 F.3d at 162); *see Perry*, 782 F.3d at 79 (stating that deliberate indifference "requires evidence that the absence or inadequacy of treatment is intentional").

A constitutional claim may arise when "the treatment provided [was] so inadequate as 'to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind.'" *Leavitt*, 645 F.3d at 497 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

Moreover, "[p]rison officials 'who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Giroux v. Somerset County*, 178 F.3d 28, 33 (1st Cir. 1999) (quoting *Farmer*, 511 U.S. at 844); *see Burrell*, 307 F.3d at 8 (1st Cir. 2002) (recognizing that the focus of the deliberate indifference analysis "is on what the jailers knew and what they did in response").

Plaintiff alleges in the proposed amended complaint that Tyler was detoxing, had mental health issues, had a history of self-harm, and had expressed his intention to commit suicide. As alleged, Plaintiff's condition can reasonably be viewed as a serious condition requiring medical attention, and thus Plaintiff has satisfied the objective prong of the deliberate indifference standard. *See Pelletier v. Magnuson*, 201 F. Supp. 2d 148, 163 (1st Cir. 2002) (quoting *Sanville v. McCaughtry*, 226 F.3d 724, 734 (7th Cir. 2001) (holding that suicide was a "'serious harm' by any measure" and "failure to provide treatment for mental illness can be a 'serious harm' in and of itself").

To satisfy the subjective prong, the proposed amended complaint must allege facts from which one could infer that Defendant Howard and Willey had knowledge of or were willfully blind toward the elevated risk. *Manarite v. Springfield*, 957 F.2d 953, 956 (1st Cir. 1992). Plaintiff alleges that Defendants were aware of Tyler's multiple complaints of

8

his deteriorating mental health condition yet neither examined Plaintiff. Tyler's complaints were not insignificant; they included Tyler's "begging for help" and his reports of "crazy mood swings," that he is "losing [his] breath," that he is "losing it," that his "anger is getting worse," and that he is "having anxiety attacks all day." (Proposed Amended Complaint ¶¶ 48, 50, 60.) Instead of examining Tyler before determining the most appropriate course of treatment, in response to Tyler's complaints, on December 8, Defendant Willey ordered a certain medication and on December 11, Defendant Howard ordered another medication. Plaintiff also alleges that neither the corrections staff nor the medical staff investigated the report of Tyler's friend that Tyler had threatened suicide.

Plaintiff's proposed amended complaint can reasonably be construed to allege that although Defendants Howard and Willey were aware that Tyler was experiencing a mental health crisis that required immediate medical attention, they did not examine him over multiple days and did not implement measures to reduce the risk of self-harm. While discovery and the development of the record might ultimately support Defendants' contention that Plaintiff cannot establish Defendants acted with deliberate indifference, accepting the allegations as true and drawing all reasonable inferences favorable to Plaintiff as the Court must at this stage of the proceedings, the allegations are sufficient to satisfy the subjective prong of the deliberate indifference standard. The proposed amendment as to the deliberate indifference claim, therefore, cannot be considered futile.

Defendant Howard and Willey also contend the proposed amended complaint would be futile as to Plaintiff's state court claim asserted in Count III. In Count III, Plaintiff asserts a wrongful death claim based on Defendants' alleged negligence. Defendants argue

the amendment is futile because Plaintiff failed to comply with the procedural and confidentiality requirements of the Maine Health Security Act (MHSA).

The procedural requirements of the MHSA apply as the claim is one of negligence. *Saunders v. Tisher*, 2006 ME 94, ¶ 15, 902 A.2d 830 (the requirements apply to "any case that could implicate medical malpractice insurance.") (emphasis in original); *see* 24 M.R.S. § 2502(6) (defining "action for professional negligence" as "any action for damages for injury or death against any health care provider ... whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services"). Under the MHSA, "a plaintiff seeking to bring a medical malpractice claim must first notify the defendant of the claim, file the notice in court, and present the claim to a prelitigation screening panel." *Stewart v. Mason*, No. 1:21-cv-00321, 2022 WL 1997213, 2022 1997213, at *2 (D. Me. June 6, 2022) (citing *D.S. v. Spurwink Servs., Inc.*, 2013 ME 31, ¶ 18, 65 A.3d 1196, 1200); *see also* 24 M.R.S. § 2903. The MHSA applies to cases where the health practitioner is providing care to a person who is incarcerated. *See*, *e.g.*, *Demmons v. Tritch*, 484 F. Supp. 2d 177, 179 (D. Me. 2007). When a medical malpractice claim is brought prior to satisfying the prelitigation screening prerequisite, it is proper for the Court to dismiss the state action without prejudice. *See*, *e.g.*, *Hill v. Kwan*, 2009 ME 4 ¶¶ 5–6, 962 A.2d 963, 965–66.

The MHSA clearly applies to the wrongful death claim against Defendants Howard and Willey. *Butler v. Killoran*, 1998 ME 147, ¶ 12, 714 A.2d 129, 134. Plaintiff does not allege, and the record does not otherwise reflect, that Plaintiff has satisfied the requirements

of the MHSA. The amendment to include a wrongful death claim against Defendants Howard and Willey, therefore, would be futile.[3]

### B. Motion to Dismiss

Defendants Howard and Willey moved to dismiss the original complaint for the reasons they opposed Plaintiff's motion to amend. Because the motion to dismiss was filed in response to Plaintiff's original complaint and because the issues generated by the motion to dismiss are addressed in the assessment and disposition of the motion to amend, the motion to dismiss is moot.

### C. Motion for More Definite Statement

Defendant Parkin asks the Court to order Plaintiff to provide a more definite statement of her involvement in Tyler's care and treatment. Federal Rule of Civil Procedure 12(e) provides in pertinent part: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Rule 12(e) motions are not favored in light of the availability of pretrial discovery procedures." *Haghkerdar v. Husson Coll.*, 226 F.R.D. 12, 14 (D. Me. 2005) (citation omitted). Such motions "are to strike at unintelligibility, rather than at lack of detail in the complaint." *Cox v. Me. Mar. Acad.*, 122 F.R.D. 115, 116 (D. Me. 1988). The motions are thus granted "only when a party is unable to determine the issues he must meet." *Id.*

---

[3] Although the Court could allow the amendment and stay the case, given the nature of the other claims and the undue delay on the resolution of Plaintiff's civil rights claims that would result from a stay, I do not recommend a stay of the matter. *See Gagnon v. Gosselin*, 1:16-CV-00024-NT 2016 WL 3351913 at *1 n.1, (D. Me. May 27, 2016).

Without commenting on whether Plaintiff's original complaint required a more definite statement, Plaintiff's amended complaint adequately informs Defendant Parkin of her alleged involvement in Tyler's care and the bases of Plaintiff's claim against her.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court grant in part Plaintiff's motion for leave to amend the complaint, permitting the amendment without the alleged wrongful death claim against Defendants Howard and Willey, which amendment would be without prejudice to Plaintiff's ability to allege the negligence claim in state court; dismiss as moot the motion to dismiss; and deny Defendant Parkin's motion for more definite statement.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of June, 2023.